NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
R.S. and D.S., on behalf of E.S.,   :   Civil No. 10-5265 (AET)
                                    :
                Plaintiffs,         :
                                    :
            v.                      :   MEMORANDUM OPINION
                                    :        & ORDER
                                    :
MONTGOMERY TOWNSHIP                 :
BOARD OF EDUCATION,                 :
                                    :
                Defendant.          :
_____

THOMPSON, U.S.D.J.

      This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2). The Court has made its determination after considering the written submissions of the parties, and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court denies Defendant's motion, grants in part Plaintiffs' motion, and remands for reconsideration the remaining issues.

I.    BACKGROUND

      This case arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*. E.S. is a 12-year-old child in the Montgomery Township School District (the "District") who has been diagnosed with Bipolar Disorder and Attention Deficit Hyperactivity Disorder (ADHD). (Compl. ¶ 8). E.S. attended various schools in the District from kindergarten through fourth grade. (*Id.*) Although E.S. first was educated in the general education program,

1

she was determined to be eligible for special education and related services upon her classification in April 2006 as "Emotionally Disturbed."  Under her Individualized Education Program ("IEP"), E.S. was educated primarily in a general education classroom with in-classroom support, placement in resource centers, supplemental instruction, and general education for electives.  Plaintiffs R.S. and D.S., the parents of E.S., did not contest the proposed IEPs for third or fourth grade.  On June 3, 2009, the parties met to conduct an annual review of E.S.'s IEP to review her program and develop a program and placement for fifth grade.  The District recommended E.S's placement in the resource center for Reading, Language Arts and Social Studies, and continued placement in Replacement Mathematics, Supplemental Reading, and in-class support Science, with weekly counseling sessions.  Plaintiffs disagreed with this recommendation, expressing their preference for a private, out-of-district placement for students with learning disabilities based on the recommendation of a private psychologist they had hired to evaluate E.S.

On August 11, 2009, Plaintiffs informed the District of their intent to unilaterally place E.S. at Newgrange Independent School ("Newgrange").  On September 23, 2009, the Plaintiffs filed a Due Process Petition with the New Jersey Office of Special Education programs, seeking, in part, reimbursement for the costs of the placement and for related transportation costs.  (Compl. ¶ 9).

Hearings were held before the Honorable Elia A. Pelios, an Administrative Law Judge ("ALJ") from the Office of Administrative Law, State of New Jersey, starting on December 18, 2009, and continuing on February 23, March 1, April 8, 14, and 15, May 10, 12, and 20, and June 3, 14, and 15, 2010.  (*Id*. ¶ 11).  In the hearings, Plaintiffs contended that E.S.'s behavior,

social skills, emotional functioning, and academic skills, had not progressed under the District's program, and that despite the IEP program designed for E.S., the District had failed to provide E.S. with a free appropriate public education ("FAPE") tailored to address her individual needs. (*Id.* ¶ 1).

On July 19, 2010, ALJ Pelios issued a final decision (hereinafter referred to as the "ALJ Final Decision") finding that "the District properly considered E.S.'s potential and educational needs and that the IEP for the 2009-2010 school year was reasonably calculated to provide her with meaningful educational benefit in the least restrictive environment" and consequently denying Plaintiffs' claims for reimbursement.

On October 12, 2010, Plaintiffs filed a Complaint against the Board, pursuant to 20 U.S.C. § 1415 (i)(2), seeking reversal of the ALJ Final Decision. (Compl.) [1].

The parties have now filed cross motions for summary judgment.   Plaintiffs also seek to supplement the record with testimony from additional witnesses.

## II.   DISCUSSION

A. Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).  In

3

resolving a motion for summary judgment, the Court must determine "whether the evidence . . . is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

    B.  Standard of Review

In a case brought to appeal an ALJ's decision under the Individuals with Disabilities Education Act (the "IDEA," or the "Act"), the district court applies a "modified version of de novo review." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). "[B]asing its decision on the preponderance of the evidence, [the court] shall grant such relief as the court determines is appropriate" and should give "due weight" to the administrative proceedings. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-206 (1982); *see also* 20 U.S.C. § 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."). The ALJ's findings of fact from the administrative proceedings are "considered prima facie correct." *Shore Reg'l*, 381 F.3d at 199. If the district court disagrees with the ALJ's findings, it must explain why by "point[ing] to contrary nontestimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003). However, when the district court hears additional evidence, it is "free to accept or reject the agency findings" based on the "new, expanded record." *Id*. The district court is not to "substitute [its] own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206.

C. IDEA

Under the IDEA, Congress grants federal funding to the states for special education programs contingent on the states providing a "free appropriate public education" to disabled children. 20 U.S.C. § 1400(d)(1)(A). At the IDEA's core is the requirement that an IEP be designed for each child. 20 U.S.C. § 1414(d); *S.H.*, 336 F.3d at 264. The IEP sets forth the goals and objectives which are to be used to determine whether the child is receiving a free appropriate public education. 20 U.S.C. § 1414(d); *S.H.*, 336 F.3d at 264. The IEP is developed by a team composed of the child's parents, the child's regular and special education teachers, a curriculum specialist from the school district, and in addition, if requested by the parents or the school, anyone with special knowledge or expertise related to the child's education. 20 U.S.C. § 1414(d)(1)(B); *S.H.*, 336 F.3d at 264. The IEP is reviewed at least annually to determine whether the child is reaching the stated goals, and is revised as necessary. 20 U.S.C. § 1414(d)(1)(A); *S.H.*, 336 F.3d at 265. The burden of proof in a proceeding to challenge an IEP is placed upon the party seeking relief. *Ramsey*, 435 F.3d at 391-92.

    1.    Free Appropriate Public Education

In *Rowley*, the Supreme Court considered the meaning of the phrase "free appropriate public education." *Rowley*, 458 U.S. at 201-03. It held that a state can satisfy the requirement of a "free appropriate public education" when a state provides "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Id.* at 203. The state must offer access to education that is "meaningful," *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999), but it does not need to offer education that "maximize[s] each child's potential," *Rowley*, 458 U.S. at 198. The United States Court of Appeals for the

5

Third Circuit has further clarified that a "free appropriate public education" "call[s] for more than a trivial educational benefit" and requires an IEP to provide "significant learning" and to confer a "meaningful benefit." *Ridgewood*, 172 F.3d at 247 (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 182-84 (3d Cir. 1988)). The court determines whether the benefit is meaningful in relation to the child's individual potential. *Id.* Thus, if the child "display[s] considerable intellectual potential, [the IDEA] requires 'a great deal more than a negligible [benefit].'" *Id.* (quoting *Polk*, 853 F.2d at 182).

### 2. Least Restrictive Environment

The IDEA also emphasizes that children with disabilities be educated in "the least restrictive environment." 20 U.S.C. § 1412(a)(5). This requirement delineates a strong preference for mainstreaming disabled children, and provides that

> [t]o the maximum extent appropriate, children with disabilities . . . are [to be] educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment [should] occur[] only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

*Id.*; *see Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1214 (3d Cir. 1993) (citations omitted). The Third Circuit has recognized the inherent tension in the Act between the preference for mainstreaming children with disabilities and the requirement of individualized education programs. *Ramsey*, 435 F.3d at 391. Consequently, in an attempt to harmonize these competing ideals, the Third Circuit has interpreted the "least restrictive environment" provision as "mandating education 'in the least restrictive environment that will provide . . . a meaningful educational benefit.'" *S.H.*, 336 F.3d at 265 (quoting *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)).

6

The Third Circuit has adopted a two-part test to determine whether the "least restrictive environment" requirement is met. *Oberti*, 995 F.2d at 1215. First, the reviewing court must determine "whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily." *Kingwood Twp.*, 205 F.3d at 579. In so doing, district courts are directed to consider among other factors: "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom." *Ramsey*, 435 F.3d at 390 (quoting *Kingwood Twp.*, 205 F.3d at 579). Second, if a court finds "that placement outside of a regular classroom is necessary for the child's educational benefit," then it must determine whether the school has made efforts to mainstream the child whenever possible. *Kingwood Twp.*, 205 F.3d at 579. Ultimately, however, the "IDEA requires that disabled students be educated in the least restrictive *appropriate* educational environment." *Ridgewood*, 172 F.3d at 249 (emphasis added). "If the educational environment is not appropriate, then there is no need to consider whether it is the least restrictive." *S.H.*, 336 F.3d at 272.

D. Motion to Supplement the Record

As an initial matter, Plaintiffs have requested that the Court admit additional evidence to supplement the administrative record. The IDEA provides that a district court reviewing an administrative agency decision "shall hear additional evidence at the request of a party . . . ." 20 U.S.C. § 1415(i)(2)(C)(ii). Despite this statutory directive, the decision whether to admit additional evidence is within the discretion of the trial court. *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995). To aid in the exercise of that discretion, a district court must assess whether the evidence is "relevant, noncumulative, and useful" for the purpose of determining if Congress' goal

has been reached for the child involved. *Id*. Moreover, the district court must remain mindful of the "general framework of deference to state decision-makers that is dictated by the IDEA." *Id*. at 758 (internal citations omitted). In other words, additional or supplemental evidence should only be used to fill gaps in the administrative record, not to render the administrative proceeding a mere formality. *See also id*.

Plaintiffs proffer four additional expert reports generated after the ALJ proceedings which they claim should "fill gaps in the record, corroborate the expert reports and complete the picture of a child whose special needs were not met by a School District charged with educating her." (Pls.' Br. at 28-29). These reports include:

- The Psychological Evaluation Report of Noelle A. Cauda-Laufer, dated April 13, 2011.
- The Educational Evaluation Report of Dr. Carole J. Aitchison of December 3 & 10, 2010.
- The Educational Consultation Report of Gloria Bland Katz, dated February 17, 2011.
- The Independent Language Evaluation Report of Karen Kimberlin, dated January 25, 2011.

Defendant contends, inter alia, that Plaintiffs' request should be dismissed because Plaintiffs have failed to demonstrate that the evidence with which they seek to supplement the record is relevant, non-cumulative and useful. (Def.'s Opp'n at 11). Defendant notes that the four reports Plaintiffs seek to introduce are based upon evaluations of E.S. conducted between December 2010 and April 2011 and thus arguably bare little relevance to the issue of whether the ALJ properly decided that the District's proposed program for the 2009-2010 school year was reasonably calculated to provide E.S. with meaningful educational benefit in the least restrictive environment. (*Id*.) To the extent the reports provide an update regarding E.S.'s comportment and progress at Newgrange or summarize the previous proceedings, the Court agrees. As the Third Circuit has

noted, "the measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date . . . . Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement." *Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993). Moreover, the appropriateness of an IEP is not determined by a comparison of the private school and the program proposed by the district. *S.H.*, 336 F.3d at 271.

However, the Court notes that two of the reports provide additional information regarding E.S.'s performance on certain standardized testing prior to placement at Newgrange and/or skills assessment in connection with the evaluation of the proposed IEP which the Court finds sufficiently "relevant, noncumulative, and useful" to its evaluation of whether the School District's proposed program would provide a FAPE. Consequently, the Court will supplement the record with Section IV of the Educational Consultation Report of Gloria Bland Katz, dated February 17, 2011, and the "Summary of test results" portion of the Independent Language Evaluation Report of Karen Kimberlin, dated January 25, 2011.

  E. Review of the ALJ Final Judgment

Based on this supplemented record, Plaintiffs maintain that the ALJ Final Decision should be vacated because: (1) the ALJ's factual findings are not supported by the preponderance of the evidence; and (2) the ALJ's credibility determinations are not entitled to any weight since his credibility determinations are contradicted by, and contrary to, non-testimonial evidence on the record. The Court will discuss these matters in turn.

As an initial matter, the Court acknowledges that the testimony before the ALJ was conflicting as to whether E.S. was making progress within the School District's program. District

personnel testified that the proposed IEP was appropriate and that E.S. was making measureable progress under the program whereas Plaintiffs' experts testified that the program was inadequate and that a review of E.S.'s standardized testing results over the previous year suggested that in a number of respects E.S. had regressed, thus undermining the position that E.S. could be said to be making meaningful progress under her current IEP.  In particular, the Court notes that Plaintiffs submitted evidence suggesting that E.S.'s scores under the WISC-IV Verbal Comprehension Index, Perceptual Reasoning Index, Working Memory Index, and Processing Speed Index demonstrated a significant decrease in working memory, processing speed, letter word identification, reading comprehension, reading fluency, broad reading, among other areas.

Dr. King additionally testified that E.S. had a learning disability which the School District failed to diagnose and account for in the preparation of E.S.'s IEP.  Dr. King also opined that the IEPs largely failed to provide adequate information on E.S.'s levels of achievement and failed to include measurable goals and objectives as required under the IDEA.  Dr. Salvatore correspondingly testified that due to the severity of E.S.'s bi-polar disease, placement in the District's proposed program might only exacerbate her behavioral issues and lead to inconsistencies in her availability to learn.[1]

      In his findings of fact the ALJ notes that the District's witnesses testified that the IEP promulgated appropriate measurable goals and objectives in all academic areas, but the ALJ did not address the evidence submitted by Plaintiffs including the body of standardized testing that would suggest that E.S. has regressed with respect to her mastery of certain areas and skills.  Nor does the ALJ Final Decision reflect upon E.S.'s previously undiagnosed learning disability and whether the IEP as constituted adequately addressed the issues that disability presents.  *See also* 20 U.S.C. §

---

[1] Dr. Salvatore also testified that based on her observations she believes E.S. has a potential for suicide but has not felt the threat was strong or present enough to recommend hospitalization for E.S.

1400(c) (finding that the educational needs of millions of children with disabilities were not being fully met because, inter alia, undiagnosed disabilities prevented the children from having a successful educational experience).

Reading the ALJ Final Decision, it appears that the ALJ's adoption of the School District's position was influenced by the greater weight he accorded to the School District witnesses' testimony. Although the ALJ found Dr. King and Dr. Salvatore to be "intelligent, cogent witnesses," he found their testimony less credible than that of the District's witnesses whose opinions were "grounded in their actual involvement in the development of the subject IEP, there [sic] personal day to day experience with E.S.., as well as their knowledge of the programs in the district." Plaintiffs contend that the ALJ inappropriately relied on the Defendant's witnesses and that the ALJ's negative credibility determinations with regard to Plaintiffs' experts are unsupported by the record.

Normally, a district court should accept the ALJ's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citations and quotations omitted). In view of the evidence proffered by Plaintiffs, however, the Court has serious reservations as to whether the pointed critiques of the School District's proposed IEP are sufficiently addressed within the ALJ's Final Decision. To the extent the ALJ credited the District witnesses because of their involvement in the proposed IEP, the Court notes that if such reasoning was the main basis for according greater weight to the testimony of district personnel, then few students would ever be able to prevail against a school district. Furthermore, as one Court has noted, if the views of school personnel regarding an appropriate educational placement for a disabled child were conclusive, then

11

administrative hearings conducted by an impartial decisionmaker would be unnecessary. *See Ojai Unified Sch. Dist.*, 4 F.3d 1467, 1476 (9th Cir. 1993). That is the danger to be avoided in cases such as this.

Likewise, the Court notes that the ALJ's finding that E.S.'s behavioral issues were not impeding her progress based on his crediting of the testimony of District personnel and a review of contemporaneous weekly progress reports and report cards seems at odds with the extrinsic evidence in the record that the Director of Special Education for the School District sought approval for an independent psychiatrist examination of E.S. that year writing:

> [S]chool staff continue to observe inconsistencies in appropriate behaviors. At times, these behaviors impact negatively on appropriate social interaction with peers. *In addition, there have been some inappropriate behaviors that hinder the teacher-student learning process.* As a result of those factors, I would like to propose that the district send Elaina for an independent psychiatric evaluation.

*See* (Pls.' Mot. at 36–37 (citing Pls.' Ex. P-23)) (emphasis added). Taken together, the Court is left with the impression that the factual record needs to be further developed to determine whether the School District's proposed IEP would provide a FAPE.

Recognizing that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy," and "must be careful to avoid imposing their view of preferable educational methods upon the States," *Rowley*, 458 U.S. at 207-08, the Court remands the case to the ALJ for redetermination of whether plaintiff received a FAPE in accordance with this ruling. *See K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 545 F.Supp.2d 995, 1006 (N.D.Cal. Feb 22, 2008) (remanding IDEA case to the ALJ for findings and conclusions consistent with appropriate credibility determinations); *Somoza v. N.Y.C. Dept. of Educ.*, 475 F. Supp. 2d 373, 391 (S.D.N.Y. 2007) *rev'd on other grounds,* 538 F. 3d 106 (2d. Cir. 2008) (noting

that "courts tend . . . to return the decision to the agency in order to rely on the agency's expertise and protect the integrity of the administrative process") (internal quotations and citations omitted); *Anthony v. D.C.*, 463 F. Supp. 2d 37, 43-44 (D.D.C. 2006) (remanding the case so that the hearing officer could formulate an appropriate compensatory education award in light of the appropriate statute of limitations period). Accordingly, the Court rules that the ALJ should reconsider his finding that the School District offered a FAPE in consideration of the standardized test results proffered by Plaintiffs and E.S.'s previously undiagnosed learning disability as combined with the alleged severity of E.S.'s bipolar disorder. If on remand the ALJ finds it lacks sufficient evidence to render a determination as to adequacy of the goals and objectives of the proposed IEP, the ALJ should hear more evidence on this issue from both parties.

### III.   CONCLUSION

For the reasons set forth above, and for good cause shown,

IT IS on this  8th  day of June, 2012,

ORDERED that Defendant Montgomery Township Board of Education's Motion for Summary Judgment [docket # 12] is DENIED; and it is

ORDERED that Plaintiffs R.S. & D.S.'s Motion for Summary Judgment [13] is GRANTED IN PART and DENIED IN PART; and it is

ORDERED that this case be remanded to the Office of Administrative Law, State of New Jersey.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.